Thank you, Your Honors. If it pleases the Court, Max Hensley for Mr. Lopez-Gomez. I will attempt to reserve two minutes for rebuttal. This case is about whether Antonio Lopez-Gomez will receive the opportunity that he is constitutionally, statutorily, and procedurally entitled to to prove his United States citizenship. The District Court's grant of summary judgment to the government was error for two independent reasons. First, the order misapplied the summary judgment standard by drawing all inference against Mr. Lopez-Gomez, the non-moving party. It did so by placing the burden of proof on him rather than on the government, and it did so despite this Court's prior order finding a material issue, a genuine issue of material fact, on functionally the same record. Second, the District Court failed to request or receive a knowing and voluntary waiver of Mr. Lopez-Gomez's right to counsel. That failure, before allowing him to proceed pro se, violated his due process rights. So turning first to the summary judgment order itself, what the District Court held was that Mr. Lopez-Gomez, and this is at ER 11, failed to meet his burden to demonstrate by a preponderance of the evidence that he is a United States citizen. That sentence contains three fundamental errors. First, on its face, it shifts the burden from the government where it belongs on to Mr. Lopez-Gomez. The question before the District Court was not whether Mr. Lopez-Gomez had made his case. It is whether the government had proven that no reasonable fact finder could find in favor of Mr. Lopez-Gomez. At trial, though, Lopez-Gomez will have the burden, correct? And this summary judgment proceeding was for the purpose of determining whether it makes sense for the case to go to trial? Yes, Your Honor. So would he have any evidence at trial beyond what we have in front of us now? There are two answers to that, Your Honor. First, part of the reason for the lack of evidence in the record is his pro se status. And I'll get to the problems that that caused, but that infects this entire record going through it. But second, the evidence in the record as it is, is insufficient both to defeat summary judgment and potentially win at trial. I'll turn you to ER-268, which is the declaration of Mr. Lopez-Gomez's father, Stephen Caldera. Could you keep your voice up a little? I'm sorry, Your Honor. I'll stay closer to the microphone. ER-268, the declaration of Mr. Caldera, Mr. Lopez-Gomez's father. And what that declaration says is that between 1947 and 1968, a period of 21 years, Mr. Caldera spent months at a time traveling between Mexico and the United States for the purpose of working in California. And so it's certainly a reasonable inference, and it may in fact be the best inference. But there would have to be an inference, right? So I'm just struggling with whether if we had this exact evidence at trial, the judge would have to direct a verdict for the government, because there isn't actually evidence of enough time here without some extrapolation that I don't know if it would be proper for the jury to make. The judge would not have to direct a verdict. And I think the best case for that is Vera Villegas. And in Vera Villegas, what this court held is that the lack of documentary, specific documentary evidence, it is an abusive discretion to find that testimonial evidence can be overridden by the lack of documentary evidence. I agree with that. So it could be testimony, but we know, so this testimony in the declaration itself is somewhat vague. And then we actually have a deposition that's even worse. So I don't know why we should think that at trial it'll be better. Do you have, I mean, you started to say before there's going to be some difference if he has counsel, but what will the difference be? Well, Your Honor, we, in this proceeding, we have not been uncovered that specific evidence. But if this were remanded for a hearing with counsel, the counsel at that point could undergo that investigation. But I'll also point out that... the witnesses are too old to remember. Mr. Caldera is quite elderly at this point, and his memory is fading. Careful now, with Judge Ferguson here. Mr. Caldera's memory is certainly fading. That is correct, Your Honor. But I think that that gets to the difference between the summary judgment standard and the trial standard, because the trial process is not just a formality. It puts the witnesses live, it puts the testimony live, and it allows for an examination of the credibility where the fact finder could determine that this testimony is enough to allow an inference that Mr. Caldera was present in the United States for the sufficient amount of time. Will the declaration itself be admissible at trial? Or would it be? I believe that would be hearsay, Your Honor. Right. So, the jury isn't going to get to consider the inferences in the declaration. They're going to have the deposition of a man who honestly says, I can't remember the date of my marriage, I can't remember a lot of things, who was found to have been very honest by the judge, but has a situation where he's not suddenly going to reclaim his memory. You know, Mr. Hensley, you did a great job. I'm real proud of you as a Seattle-Davis Wright-Germain lawyer for doing what you did. But, you know, district judges sometimes look at a case and say, there's no hope here, so let's put it out of its misery rather than deny a summary judgment under the standard you're talking about when there's absolutely nothing that can come forward. So that's why I think Judge Friedland's question is a real sharp one. What else could be presented? There wasn't a witness who was excluded. There wasn't a person who was unavailable. And your much either about what happened before he was born. So where is it going to come from? I think that that would be a question if the decision before the district court were one that it was entitled to make, because that gets to one of the other errors in the district court's decision. When this court first considered the record, it had the same declaration before it. And Judge McEwen and Judge Clifton and Judge Tallman said that record creates a genuine issue of material fact. But since then, there has been discovery, including these depositions. And now the district court looked at the record, saw the depositions. The depositions are much more like what would happen at trial, and the declaration won't be admissible. So you look at what this trial would look like, and you say, why should we waste resources, I think? I mean, I think that must have been what it why is that not what the district court should have been thinking at that point? I don't want to speculate about what the district court was thinking and didn't write in its But the problem here is that that's not within the district court's discretion. Why don't you just tell me what your argument is? My argument I mean, just cut right to the chase. Yes, Your Honor. My argument is that the district court I mean, he was born, Antonio was born in Mexico in October 1968. Correct. Is that right? And then the government initiated deportation proceeding against him in 2005. And he found out, through his mother, who his father was. Is that right? That's correct, Your Honor. And they did some tests. So we know who his father is now. And so he's claiming derivative citizenship, right? Yes. Through his father, Stephen, who was born in Buena Park, two years after I was. And And so for Antonio to make it, he has to show that physical presence, he was physically present in the U.S. for at least five years before Stephen turned 14 years of age. Right? Yes. And 10 years in total. I don't know who, this is a crazy way they set this thing up. And so that five years had to come between 1925 and 1939. And then he'd have to show, or at least there's some Well, that's the father. The only facts we're looking at now are about the father. That's correct, Your Honor. It's 10 years prior to Mr. López Gómez's birth. So then we need evidence that the father was physically present for at least five years after he turned 14 years of age. But before Antonio was born. Huh? Yes, Your Honor. Then all the panel should consider are the facts about the father. And isn't the case over with? If we conclude that the father satisfied both five-year physical presence requirements. I don't believe that this court could grant summary judgment in favor of Mr. López Gómez. You have to keep your voice down. I don't believe that this court could grant summary judgment in favor of my client. And it would need to remand to the district court for that. You know, I can't. I got hearing aids on. I've got the speaker up loud. I mean, you have any passion about this case? Huh? I do, Your Honor. So wake up. I notice I'm well over my time. So I'll try to answer the question briefly. We'll still give you two minutes for rebuttal. And I would appreciate the opportunity to discuss the due process element as well, if that's possible. But the answer to your question, Judge Pregerson, is that I do not believe that this court can grant summary judgment in favor of Mr. López Gómez. What we're requesting is a remand to the district court for a full trial on that question. Oh, that's all right. Yeah. And to get to the due process issue very briefly, what I would just like to say is that even if this panel disagrees with me on the merits of the summary judgment order, it cannot affirm without reaching the question of whether Mr. López Gómez's due process rights were violated. And we've set forth the argument in our brief, and I think the question— Did he have a lawyer? Did he have a lawyer? In the district court? No, Your Honor. No, he didn't have a lawyer. Correct. And did the— Well, he had a lawyer. Did the judge point that out to you? Yeah, he had a lawyer. Did he say he didn't need a lawyer? He had a lawyer, and he didn't pay his lawyer, so his lawyer withdrew. But he was told, you have plenty of time to get another lawyer. And he did have plenty of time to get another lawyer, and he just proceeded on his own, which is never a good decision, especially under these circumstances. Which brings me to the next point. Mr. Hensley, if we do remand this case, would you like to remain on it as his pro bono lawyer at trial? I would certainly be willing to discuss that with him if he would have me. Okay. Thank you. We'll give you two minutes for rebuttal. What was your last answer? I said if he would like me—if the client would like me to represent him, I would be happy to talk to him about that. All right. May it please the Court. My name is Jonathan Robbins. I'm here on behalf of Jefferson B. Sessions III, the Attorney General. Good morning, Your Honors. Mr. Robbins? Yes. Belt it out. Give us your best close-to-the-microphone deep voice. All right. I'll do my best, Your Honor. I think Your Honors have pretty much gotten to the heart of this matter. Oh, actually, before I get to the merits of this case— Why do I have to talk so fast? Yes, Your Honor. Before I get to the merits of this case, I think it's worth noting that these— Hattiesburg, address. Four square-seven years ago, a prime minister— I'm sorry, Your Honor. I can't claim to have the oral grace of President Lincoln. However, I do think it's worth noting before we get to the merits of this case that the Supreme Court is currently deciding a case called Morales-Santana right now, which deals with the statute at issue in this case and could drastically affect the outcome of this case. And I think we're looking at about four or five weeks from a decision. So the court may want to wait, if they want to cut petition or break, may want to wait five weeks or so to see what the Supreme Court does. What is the question presented in that case? It's an equal protection claim brought with respect to this statute. The requirements for fathers are different than in mothers, and there's an equal protection claim being brought. There's also a tricky issue of what the remedy would be in the case about whether they would make the mother's requirement apply to the father or the father's requirement apply to the mother. So if the mother's requirement were to apply to the father in this case, that would only require one year of presence in the United States, which I think he would probably meet in this case. So if you want to wait five weeks, you could probably save your clerk some time. Also, this case has been going on for a decade and a half, so five more weeks isn't really going to be the difference here. It could be the difference, but it's not going to matter in terms of waiting. So, Mr. Robbins, I've been a district judge now for 19 years. I've never done one of these. Is it a jury trial that the petitioner is entitled to? In theory it can be, although usually they end up being bench trials. Sometimes I handled one where a magistrate handled it. So this one was obviously a bench trial. That was all that was a – there was no jury in this case. There was no jury demand in the case either, so it was going to be decided by the district judge either on summary judgment or on some sort of record. Right, and there could have been a trial. The district judge could certainly hold a trial. But again, in this case, with respect to the summary judgment motion, I don't want to beat a dead horse here too much because it seems like Your Honors understand what's happening here. There's no genuine issue of material fact here. We have a declaration, but there's vague testimony from the affiant who's honest and admitted he couldn't remember. So the question is what happens if this case goes to trial? The answer is nothing. Nothing really changes. So as far as summary judgment is concerned. The court can see to it that he gets a good lawyer. He's got one now. Well, at the time, he originally had a lawyer before the district court proceedings, but he breached the fees and expenses agreements with that attorney, and he was given notice and opportunity about the withdrawal. Was he represented by counsel at that time? He did actually have counsel representing him before this court at that time, but that counsel, I assume because he had different counsel in district court, was not authorized to represent him in district court. So he wasn't unrepresented at all. But he did proceed pro se before the district court, but again, Your Honor, that was his choice. He was given notice and opportunity once his prior counsel withdrew. Well, you've got to go through a whole process for someone that waives the right to counsel. And that process was followed in this case. The Article III courts have procedures. Well, how do we know he even understood it? Well, the district judge in this case complied with all the local rules that were required for what happens when counsel withdraws. What did you say? I said the district court in this case complied with the local rules in giving the petitioner notice and opportunity when his prior counsel withdrew from the case. And so the argument the petitioner is making with respect to express waiver, that only applies in removal proceedings. That's a rule this court set in place in removal proceedings because I think maybe the court was concerned that the cupboard was a bit bare in administrative removal proceedings. But the cupboard's not bare in Article III courts. They have their rules and procedures for how to handle the situation. Is there a doubt in the government's mind that Stephen is the father of Antonio? No, there's no doubt about it. There's no doubt about that whatsoever, Your Honor. What? No doubt about that whatsoever, Your Honor. Say that again. There is no doubt about that whatsoever, Your Honor. You are correct. So why don't we welcome him back into the fold? Well, Your Honor, there has to be a statutory basis for him to derive citizenship. That's the laws of our country, so there has to be a legal basis to do so. And if the Supreme Court changes the law, he might have that basis. Well, the father has met both of the five-year requirements. I'm sorry. No, the whole point is that the father can't establish that he meets those physical presence requirements. He has to demonstrate 10 years total and five years after the age of 14. And the problem is he can't demonstrate that physical presence in the United States from the ages of 14 to the time his son was born. That's the problem with the case. If he could establish that, I would agree with you, he would be a citizen. But, unfortunately, he can't do that. And, of course, he didn't even really create a genuine issue of material fact with respect to that point, and that's why the district court granted summary judgment in this case. And he didn't even contest the summary judgment motion. He did not. He didn't file anything. He didn't argue. But the government, to their credit, submitted the entire record, which included the declaration that, arguably, if you take it that any time he came back to this country, he stayed either four or five or six months to work, and you look at that declaration in a light most favorable to Mr. Lopez-Gomez, you can come to the conclusion that there's a material issue of fact. But it doesn't mean he can prove it at trial unless Mr. Hensley goes out there and finds new people beyond his siblings to say, yeah, I have work records or something else that show he was here from this point to that point. That's correct. And remember, that declaration is certainly part of the record, but it's not the only thing in discovery. We also have the deposition testimony of the affiant, and that's really where the problem lies, as Your Honor pointed, his honest testimony that he's not going to be able to fill in any of the gaps. So when we're making inferences, we only make inferences that are reasonable, and if there's no factual predicate by which a district judge can make a reasonable inference, that's not. Let me ask you this, if you don't mind. In granting summary judgment, did the district court construe the facts in the light most favorable to Antonio? Yes. Yes, they did. They inferred certain amounts of physical presence based on his assertions that he worked in the United States during the period between the ages of 14 and 1968 when his son was born, and they did infer about 14 months of physical presence based on his assertions that he'd worked in that area. What they weren't able to do was make any inferences with respect to physical presence about the time that he claims to have traveled between. And in fact, when we asked him about it at deposition testimony to clarify what kind of times or dates that we could infer with respect to those assertions, he specifically said, I couldn't tell you if it's days or months or anything. He really just admitted that he couldn't tell us what we could infer from those assertions. So, yes, the district judge did infer assertions that were reasonable to make, but did not make assertions where there was no factual predicate by which he could reasonably make any inferences. If he had counsel now and counsel could find employment records that showed more time, is there anything that would preclude that from being introduced at trial? I mean, it's hard for me to speculate about specific evidence, about if there might be objections to evidence or veracity about the veracity of evidence. But in theory, yes. Does the district court say that they're construing the facts in the light most favorable to Antonio? Yes, the district court definitely did that. Where is that, that statement? It's actually on the district judge. Sorry, I'm getting away from the mic here. The district judge specifically talks about the legal standard on pages five, six. Speak a little slower, it'd be helpful. I'm sorry, on pages five through six of the record, the district judge specifically speaks about the legal standard with respect to summary judgment and talks about how the issues must be resolved in the favor of the petitioner. On page six of your brief, you have a heading that says that Lopez Gomez was again informed of his right to counsel. Can you point to when and how he was informed of his right to counsel? On page six of the brief? Where on the brief are you looking? I'm looking at the heading on page six of your brief. It says, petitioner's counsel withdraws and petitioner is again informed of his right to counsel. That is in the supplemental record filed by the government. It's on page, let me see if I can find the exact page here. This is in the, it's in the judge's order where he's notifying the petitioner. Just a moment. It looks like page, just a moment, Your Honor, I'm having trouble finding it here. I'm looking for the judge's, Judge Whelan's order when he granted the, it's in Judge Whelan's order when he granted the notice to withdraw. Just a moment. I'm having trouble finding it. I can, just a. So, on page ER 372, it says petitioner has time to find new counsel. Is that the, what you mean by informed of his right to counsel? Oh, it's here on, yeah, page 380 to 382 is the judge's order here. Yes, 382. 382 looks like a docket sheet. Is that what you mean? I'm sorry. I'm in the main record here. I'm on 382 of the, what is it entitled? Oh, it doesn't have a title here. It's the record that was filed by petitioner in this case. It's an order granting Attorney Linda Pollack's motion to withdraw. It's docket number 29 on the district court docket. So, read us the part you're hanging your hat on here. Petitioner has informed, okay, well, there's a lot here. Petitioner has informed Pollack that he no longer wishes. Go more slowly, please. Now I can't even hear you. Here petitioner has informed Pollack, that's his former attorney, that he no longer wishes to employ his counsel and that he does not have the funds to pay counsel at this time. You want to read that for me? Oh, sorry. I don't have all this technology. I apologize, Your Honor. All I got is papers that I look at. Okay, first. I don't know how to use these computers. First the judge acknowledges. Okay, first the judge acknowledges that counsel cannot withdraw, however. Go ahead. Okay. First the judge acknowledges that counsel cannot withdraw until reasonable steps are taken to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing for time for employment of other counsel, complying with Rule 3-700D, and complying with applicable laws and rules. Here petitioner has informed Pollack, Linda Pollack was his former counsel, that he no longer wishes to employ his counsel and that he does not have the funds to pay counsel at this time. There are appropriate reasons for counsel to seek withdrawal. The next page, petitioner is also not prejudiced by counsel's withdrawal. Petitioner has time to find new counsel, as there are no hearing dates set for this case. Additionally, Pollack took reasonable steps to avoid reasonably foreseeable prejudice to the petitioner's rights. Counsel gave notice to petitioner with ample time for him to retain new counsel and returned all documents that she had related to this matter. I'd also point out that petitioner acknowledged during deposition that his sister and he had authorized his sister to receive those documents and she did in fact receive all those documents. So where does the judge tell him of his right to counsel? I didn't hear it in what you just said. Well, doesn't the order put him on notice? He's specifically informing, I mean, petitioner has this order that says that he has right to seek new counsel. Well, it says he has time to seek new counsel. Is that what you mean? Well, I mean, petitioner, I would also note that petitioner was informed way back in removal proceedings repeatedly that he had a right to counsel. He acknowledged that and actually got counsel. He was simultaneously, while this order was being granted, he was represented by counsel before this court. Obviously his counsel before district court withdrew, but I don't think there's any dispute here that he knew he had right to counsel. He had counsel all over the place. I mean, I think it would be a stretch to say that he didn't know he had right to counsel. I don't think he would have known, but that may be different than whether the judge actually went through a dialogue in which he informed him of his right again, which is what your brief says. We didn't say a dialogue. We just said he was informed of the right to counsel, and I think this order pretty well does that. We didn't mention it. We didn't say anything about a dialogue. But, again, every local rule here with the district court was complied with by the judge. We think that there is no error in what happened here. I certainly agree that it's – oh, I see I'm out of time. Well, what's wrong with giving him a hearing before the district court? Well, Your Honor, we think there's no point to your hearing here because there's no genuine issue of material fact, and even if he'd been represented by counsel. We should speak a little into the microphone. Yes. Well, we think because there's no genuine issue of material fact here, that even if there were counsel, I mean, he wasn't prejudiced because at the end of the day the evidence shows that the father moved back to Mexico and can't fill in the gaps about the physical presence that he needs to demonstrate citizenship through acquisition. I mean, I agree it's a sad case. It's unfortunate the father has no more memory of where he was. But, unfortunately, that isn't going to change if he's represented by counsel. So unless there are any other further questions, I thank the court very much for its time. Thank you. Thank you. Thank you. So you have two minutes for rebuttal. Thank you, Your Honors. I'll just make two very quick points. On the question of the court's inquiry as to the right to counsel, the discussion that counsel was just referring to is on ER 371 and 2, if you were looking for it. Thank you. The test here is not whether the district court complied with its own local rules. The test is whether the district court complied with the requirements of due process, as this court has set out in Tawadrou's and in Buick, which says you must inquire specifically as to whether a petitioner wishes to proceed pro se and then receive a knowing, voluntary, affirmative response. And I don't think it's disputed that neither of those things occurred here. So then the legal question is whether that requirement applies in the district court proceeding under 1252b-5. And it's clear here that this is part of the removal proceedings. We're discussing whether Mr. López-Gómez will be removed. And the only way he gets that hearing is through the execution of the removal statutes. And then to turn to the merits of the summary judgment order, I wanted to point the court to two sections of Mr. Caldera's deposition that were not discussed in detail, where he says repeatedly that while he may not remember the specifics of the details, he stands by the veracity of those claims. And what that means is nothing in the declaration was controverted. We can't hypothesize that there would be a lack of evidence when all we have is the confirmation and the testimony of the other witnesses, Mr. López-Gómez's sister, his cousin, Mr. Verdusco, his mother, Margarita, all confirm the testimony, not with specific dates. That is correct. But they do not controvert the testimony that this court previously found established a genuine issue of material fact that warranted a trial. Thank you. Thank you, both sides, for your arguments. The case is submitted.
judges: Pregerson, Friedland, Lasnik